IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DEBORAH L. COWGILL, | ) | CASE NO. 5:07 cv 3407 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | MAGISTRATE JUDGE McHARGH |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner | ) | |
| of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

  This case is before the Magistrate Judge pursuant to Local Rule. The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Deborah L. Cowgill's application for Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

  For the reasons set forth below, the Court REVERSES and REMANDS the decision of the Commissioner for further proceedings not inconsistent with this decision.

## I. PROCEDURAL HISTORY

  On July 12, 2004, Plaintiff filed an application for Disability Insurance benefits, alleging a disability onset date of January 2, 2002 due to limitations related to degenerative disc disease. On March 14, 2007, Administrative Law Judge ("ALJ") Mark Carissimi determined Plaintiff had

the residual functional capacity ("RFC") to perform sedentary work and, therefore, was not disabled (Tr. 21). On appeal, Plaintiff claims the ALJ's disability determination was not supported by substantial evidence.

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Born on November 23, 1956 (age 50 at the time of the ALJ's determination), Plaintiff was a "younger individual" during the relevant time period. *See* [20 C.F.R. §§404.1563](), 416. 963. Plaintiff graduated high school and completed one year of college (Tr. 64).

### B.  Medical Evidence

In January 2003, Lloyd Dennis, M.D., saw Plaintiff for a flare up of back pain and difficulty walking (Tr. 104). Dr. Dennis had last provided medication refills in November 2001 (Id.). On examination, Plaintiff was in a somewhat flexed position, had no edema, and reflexes were +4 and symmetrical (Id.). Dr. Dennis diagnosed degenerative joint disease of the lumbar spine, history of fibromyalgia, and prescribed pain medication (Id.).

Plaintiff saw Dr. Dennis again in June 2003 (Tr. 104). Plaintiff complained of pain with walking and leg pain, which had worsened (Id.). Plaintiff denied having had any recent trauma (Id.). On examination, Plaintiff had no edema, diminished sensation in the left thigh, and limited range of motion (Id.). Dr. Dennis noted that Plaintiff had a history of degenerative joint disease of the lumbosacral spine with bulging discs (Id.). Dr. Dennis prescribed pain medication, ordered an MRI, and referred Plaintiff for an evaluation with Dale Sybert, M.D. (Id.). Per Dr. Dennis' notes, Plaintiff's MRI showed a pinched nerve (Tr. 103, 163-64). It was also noted that Plaintiff was getting new insurance on July 1, 2003 (Tr. 104).

In August 2003, Dr. Sybert, an orthopedic spine surgeon, and Emily Yu, M.D., a physical medicine and rehabilitation specialist, evaluated Plaintiff for low back pain radiating to the bilateral lower extremities (Tr. 120-22). They noted that Plaintiff had sought treatment with a chiropractor in the past and last received physical therapy and an epidural in 1998 (Tr. 120). Drs. Sybert and Yu reviewed Plaintiff's MRI, which demonstrated two level underlying degenerative changes at L4-L5 and L5-S1 and a severe disc height collapse at L5-S1 causing bilateral foraminal stenosis (Tr. 121-22, 163-64). They also noted that Plaintiff was in moderate distress on examination and demonstrated a preserved cervical lordosis, thoracic kyphosis, and lumbar lordosis (Id.). Plaintiff was unable to do heel walking due to pain, but her gait was within normal limits for regular walking and toe walking (Tr. 122). Drs. Sybert and Yu recommended Plaintiff undergo surgery (Id.).

In September 2003, Dr. Dennis refilled Plaintiff's pain medication, but did not see her again until January 2004 (Tr. 103). Plaintiff reported that she had gained weight because she was unable to get out much (Id.). Plaintiff told Dr. Dennis that her surgery with Dr. Sybert was delayed due to changes with her insurance (Id.). She said that she would be able to undergo surgery after April 2004 (Tr. 103).

In June 2004, Dr. Sybert reported that Plaintiff had advanced collapse of L5-S1 with obligate neural foraminal stenosis (Tr. 119). Dr. Sybert performed a spinal fusion and lumbar laminectomy and implantation of an internal bone stimulator (Tr. 106-07, 123-37). At her July follow-up visit, Plaintiff had good early progress post-operatively (Tr. 117). Plaintiff reported that she had quit smoking to maximize healing (Id.). It was noted that Plaintiff had complete

3

relief from leg pain, and as anticipated, she was complaining of myofascial back pain (Id.).  Dr. Sybert prescribed Plaintiff medication (Tr. 118).

In September 2004, Plaintiff had 50 percent reduction in her back and leg pain, which was no longer radicular (Tr. 116).  Plaintiff also had good strength in her lower extremities (Id.).  Radiographs revealed good ongoing fusion consolidation (Id.).  Dr. Sybert concluded Plaintiff should continue to wear an external brace for another two months and he also prescribed pain medication, and aquatic therapy (Id.).  By November 2004, Plaintiff's leg pain continued to be 50 percent better than pre-operatively, but she was still complaining of back pain and transient bilateral paresthesias with burning dysesthetic symptoms above the knees (Tr. 114-15).  On examination, Plaintiff ambulated with a slow deliberate gait, reflexes were diminished, sciatic tension signs were absent, and she had some pain giveaway weakness (Tr. 114).  Plaintiff's back brace was well fitted and her incision was nicely healed (Id.).  Radiographs showed ongoing consolidation (Id.).  Dr. Sybert recommended physical therapy and medication (Tr. 115).

In September 2004 and January 2005, two state agency physicians reviewed the record evidence and opined that within six months from the date of her surgery Plaintiff should be able to perform a range of light work with occasional postural activities (Tr. 108-13).

On April 7, 2005, Dr. Sybert wrote to Dr. Dennis to report Plaintiff's progress (Tr. 194-95).  He commented that she primarily complained of severe right shoulder, neck, and arm pain with some numbness (Tr. 194).  She also described a knife-like pain into the legs and residual numbness in the right foot (Id.).  On examination, Plaintiff walked with an antalgic gait, demonstrated pain to the low back with palpation and pain in the neck and right shoulder (Id.).  Reflexes were diminished and Plaintiff appeared to have an impingement sign on the right

shoulder area (Id.). X-rays of Plaintiff's low back revealed good fusion at L4-L5 and L5-S1 (Tr. 195). Dr. Sybert recommended that Plaintiff have the battery generator removed and that she undergo additional studies of her shoulder and arm (Id.). Plaintiff's pain medications were renewed (Id.). The EBI battery was removed on April 29, 2005 (Tr. 193).

### C. Hearing Testimony

Plaintiff testified at her administrative hearing that she stopped working as a person who signed checks in her husband's business in 1999 (Tr. 298, 311-12). She reported that she had a long history of back problems since 1997 and 1998 (Tr. 298-99). Plaintiff stated that after she and her family moved in December 2001, she began to have more problems (Tr. 299-300). She testified that she starting having back spasms and "spent the next two years on the couch" (Tr. 300). Plaintiff also testified that she did not drive for three years, had problems standing, "couldn't do anything" and was "pretty much bedridden" (Tr. 301-02).

Plaintiff stated that after she had an MRI in June 2003, her doctor recommended surgery, but her insurance considered her condition pre-existing and she had to wait to have the surgery (Tr. 300-01, 307). Plaintiff did not have surgery until June 2004 (Tr. 299). Plaintiff reported that after her back surgery, she had problems with her shoulder, and she was "better in some conditions, worse in others" (Tr. 303). Plaintiff started therapy six months after her surgery (Id.). Plaintiff testified that she could stand without the "intense, excruciating pain," but she had leg pain and numbness (Id.). Plaintiff also said that after the surgery, she was able to grocery shop, which she could not do prior to having surgery (Tr. 304).

Plaintiff also testified that from 2002 through 2004 she lived in a split level home with her husband and high school age son, and her activities included letting out the dog, occasionally

preparing quick meals, attending parent-teacher conferences, and going to an open house (Tr. 313-14, 316).

Vocational expert ("VE") Gene Burkhammer also testified at the administrative hearing (Tr. 291, 317-21). The ALJ asked the VE to consider a hypothetical person of Plaintiff's age, educational and vocational background, who was limited to a range of sedentary work that involved no more than occasional stooping, no more than occasional climbing of ramps and stairs, and no climbing of ladders, ropes or scaffolds (Tr. 318). The VE responded that such an individual could perform jobs such as a billing clerk (1,700 local jobs), a telephone quotation clerk (700 local jobs), and a charge account clerk (400 local jobs) (Tr. 319-20). The VE testified that if the individual needed to change positions for a brief period of time and could stand briefly every one-half hour, the individual could perform the jobs he identified (Tr. 320).

### III. DISABILITY STANDARD

A claimant is entitled to receive Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." *See* 20. C.F.R. §§ 404.1505, 416.905.

### IV. STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the

proper legal standards. *See Cunningham v. Apfel*, 12 Fed. Appx. 361, 362 (6th Cir. June 15, 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a preponderance of the evidence. *See Kirk v. Secretary of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981). Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed. *Id.* Indeed, the Commissioner's determination, if supported by substantial evidence, must stand, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion. *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

This Court may not try this case de novo, resolve conflicts in the evidence, or decide questions of credibility. *See Garner*, 745 F.2d at 387. However, it may examine all evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision. *See Walker v. Secretary of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## V. ANALYSIS

### A. The ALJ's Determination as to Plaintiff's Credibility

Plaintiff first argues that the ALJ was required, but failed to make a credibility finding. Plaintiff also argues that the ALJ erred when he found her allegations as to the intensity, persistence, and limitations of her pain to be inconsistent with the medical evidence. Plaintiff's arguments is not well taken.

When there are discrepancies between what a claimant has said and what the written record shows, a reviewing court should not substitute its credibility findings for those of the ALJ. *See Wagner v.* Apfel, 238 F.3d 426 (6th Cir. Dec. 15, 2000); *Gooch v. Secretary of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987). The ALJ need not fully credit a subjective complaint where there is no underlying medical basis. *Fraley v. Secretary of Health & Human Servs.*, 733 F.2d 437, 440 (6th Cir. 1984). And, "discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence." *Walters v. Comm'r of Soc. Sec*., 127 F.3d 525, 531 (6th Cir. 1997) (citing *Bradley v. Secretary of Health & Human Servs.*, 862 F.2d 1224, 1227 (6th Cir. 1988)).

The Court recognizes pain alone may be sufficient to support a claim of disability. *See Grecol v. Halter,* No. 01-3407, 46 Fed. Appx. 773 (6th Cir. Aug 29, 2002) (unpublished); *King v. Heckler*, 742 F.2d 968, 974 (6th Cir 1984). However, a claimant's subjective assertions of pain standing alone, will not suffice. In most disability benefits cases, to find disabling pain, there must be objective evidence of an underlying medical condition and either objective medical evidence *confirming* the severity of the alleged pain arising from that medical condition, or the objectively determined medical condition must be of a severity which can *reasonably be expected* to give rise to the alleged pain. *See Buxton v. Halter* 246 F.3d 762, 773 (6th Cir. 2001); *Duncan v. Secretary of Health & Human Servs.*, 801 F.2d 847, 852-53 (6th Cir. 1986).

The *Duncan* test, however, is not the end of the analysis. The Commissioner must consider other factors that may or may not corroborate Plaintiff's allegations of pain. *See Walters*, 127 F. 3d at 531; *Felisky v. Bowen*, 35 F.3d 1027, 1039 (6th Cir. 1986); 20 C.F.R. § 416.929(c)(2). The other factors may include: statements from the claimant and the claimant's

8

treating and examining physicians; diagnosis; efforts to work; the claimant's daily activities; the location, duration, frequency and intensity of the symptoms; precipitating and aggravating factors; the type, dosage, effectiveness and side effects of any medication taken to alleviate symptoms; treatment, other than medication, the claimant receives to relieve pain; measures used by the claimant to relieve symptoms; and any other factors concerning functional limitations due to symptoms. *See Felisky*, 35 F.3d at 1039-40; 20 C.F.R. §§ 416.929(a), (c)(3). Similarly, the ALJ may take notice of the presence of muscle atrophy, reduced joint motion, muscle spasm, sensory deficits, or motor disruption.

      The ALJ provided a thorough credibility assessment and review of Plaintiff's allegations under *Duncan*. After reviewing the record as a whole, the ALJ determined that Plaintiff's impairments could be reasonably expected to produce the alleged symptoms, but that Plaintiff's statements concerning the intensity, persistence, and limiting effects of these symptoms were not fully credible (Tr. 22). The ALJ considered the appropriate factors set forth in 20 C.F.R. § 929(c)(3), including Plaintiff's daily activities, symptoms, medication taken to alleviate symptoms, treatment other than medication taken to alleviate symptoms, and evidence of her functional limitations due to her symptoms. The ALJ considered Plaintiff's claim that she spent 2002 and 2003 on the couch because she could not stand or move around the house (Id.) However, he found that there was no documentation to support Plaintiff's testimony that she could not stand or drive in 2002 and that she spent two years on the couch (Tr. 24). The ALJ also considered Plaintiff's testimony that she lived in a split level house, let the dog in and out, occasionally cooked dinner, and went to parent and teacher meetings for her son (Tr. 22). The ALJ noted that in August 2003, an MRI showed degenerative changes necessitating surgery,

which was performed on June 28, 2004 (Tr. 23).  The ALJ indicated that Plaintiff had good early progress after surgery, but then her progress slowed down (Id.).  The ALJ gave substantial weight to the report of Dr. Sybert, who performed Plaintiff's surgery and served as her treating physician (Id.).  Dr. Sybert opined in his report that Plaintiff's leg pain would resolve with time and further healing of the nerves.  The ALJ gave less weight to the opinions of the state agency physicians because they did not examine the Plaintiff (Id.).  The state agency physicians opined that Plaintiff should be able to perform light work within six months after her surgery (Tr. 23-24).  The ALJ noted that Plaintiff was largely treated in a conservative fashion prior to surgery and that the record failed to show that she required frequent emergency room visits, periods of hospitalizations, or even office care at other than regularly scheduled intervals (Tr. 24).  He also noted Plaintiff's failure to undergo physical therapy or a pain management program during this time period (Id.).

An ALJ's credibility assessment is entitled to deference and based upon the above, the Court concludes there is substantial evidence to support the ALJ's credibility determination.

### B.  The ALJ's Reliance on Plaintiff's Lack of Treatment

Plaintiff next claims the ALJ erred because he did not address Plaintiff's absence of insurance coverage and assumed that she would have gone to the emergency room even though she could not afford to pay.

The ALJ addressed Plaintiff's lack of insurance coverage as a reason for Plaintiff's lack of treatment, noting that there was a pre-existing clause in her insurance, but nevertheless found that there was no support for her complete lack of treatment during 2002 and her allegations that she could not stand or drive during 2002 (Tr. 22).

The record reflects that Plaintiff saw Dr. Dennis in May 2001 for anxiety and he refilled her prescriptions at that time (Tr. 105).  Dr. Dennis refilled her prescriptions again in August and November 2001 (Id.).  Plaintiff next saw Dr. Dennis in January 2003 and reported that her back had "flared up" (Id.).  Plaintiff returned to Dr. Dennis' office in June 2003 with continued complaints of back pain (Id.).  At this time, Dr. Dennis referred her to Dr. Sybert for an evaluation and an MRI and stated that he would see her again in six months (Id.).

Plaintiff argues that the ALJ improperly made assumptions that she would have sought treatment during 2002 even though she could not afford to pay.  Plaintiff relies on *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541 (3rd Cir. 2003) in support.  However, *Newell* is distinguishable from the present case.  In *Newell*, the ALJ denied the claimant's claim at Step Two. *Id.* at 547.  On review, the court found that the lack of evidence of treatment prior to the claimant's date last insured, in the particular circumstances of that case, did not provide an adequate basis to support the conclusion that the claimant was not disabled prior to her date last insured. *Id.*  The claimant in *Newell* claimed that she could not afford treatment until her father gave her money in June 1998, that her income was very low, and that she did not have medical insurance. *Id.*  In the present case, Plaintiff's claim was not resolved at Step Two, there was evidence of treatment prior to her date last insured, and she did not allege that she could not afford any treatment whatsoever.

The Court recognizes that "it flies in the face of the patent purposes of the Social Security Act to deny benefits to someone because he is too poor to obtain medical treatment that may help him." *Gordon v. Sec. of Health & Human Servs.*, 725 F.2d 231, 237 (4th Cir. 1984); *Gamble v. Chater*, 68 F.3d 319, 322 (9th Cir. 1995).  And Social Security Ruling 82-59p states that an

inability to pay for treatment is a good reason for a refusal to follow prescribed treatment. However, the ruling also "states that the claimant must demonstrate that he has exhausted all free or subsidized sources of treatment and document his financial circumstances before inability to pay will be considered good cause." *Gordon*, 725 F.2d at 237.  In the present case, it is unclear whether Plaintiff was uninsured for a period of time, including the time period during which she failed to obtain treatment, or whether changes in her insurance merely delayed her surgery. Plaintiff has not alleged an inability to pay for any medical care whatsoever or alleged that she looked into the availability of any free or subsidized resources.  Plaintiff claims that her symptoms were so severe that she spent two years on the couch, yet she did not seek out or obtain any medical care.  "In the ordinary course, when a claimant alleges pain so severe as to be disabling, there is a reasonable expectation that the claimant will seek examination or treatment. A failure to do so may cast doubt on a claimant's assertions of disabling pain." *Strong v. Soc. Sec. Admin*, 88 Fed. Appx. 841, 846 (6th Cir. 2004).  In *Strong*, the claimant alleged that the ALJ improperly weighed the evidence by discounting his inability to afford medical care. *Id.*  The court concluded the claimant's allegation was without merit because: (1) the claimant had not asserted that he could not at least afford an examination during the relevant period, regardless of his inability to afford continuing treatment, and (2) the ALJ did not regard the claimant's failure to seek medical examination and treatment as a "determinative factor" in his credibility assessment. *Id.*  Similarly, in the present case, Plaintiff has not asserted that she could not afford an examination during 2002, even if she could not afford back surgery.  And, the ALJ's credibility assessment shows that he relied on the record as a whole in making his credibility assessment, including evidence of Plaintiff's surgery and post-surgery condition, her reported

12

daily activities, objective medical evidence from her pre- and post-surgery examinations, her conservative treatment[1] prior to surgery, and lack of care at other than regularly scheduled intervals (Tr. 24). Accordingly, Plaintiff's claim that the ALJ erred because he did not address Plaintiff's absence of insurance coverage and assumed that she would have gone to the emergency room even though she could not afford to pay is not well taken.

However, the Court finds that in considering Plaintiff's lack of treatment and allegations with respect to her insurance, the ALJ should have evaluated whether a closed period of disability is appropriate. Although Dr. Sybert recommended surgery in August 2003, Plaintiff alleges that changes in her insurance prevented her from undergoing the surgery until June 2004. Three months after her surgery, the state agency physicians opined that she should be able to perform light work within six months from the date of her surgery, which would be by December 2004 (Tr. 110). Thus, for the time period between August 2003 and December 2004, it is possible that Plaintiff's impairments prevented her from being able to work, and that she therefore qualified for a closed period of disability. Although a change in insurance ultimately may not be sufficient justification for a ten-month delay in undergoing surgery, the ALJ should have at least evaluated whether a closed period of disability would be appropriate in light of Plaintiff's explanation for the delay.

---

[1] Indeed, although Plaintiff alleges a disability onset date of January 1, 2002, after "two years on the couch" when she saw Dr. Dennis in January 2003 and reported a back "flared up," he prescribed Celebrex and to see if it would help her pain (Tr. 104). Despite Plaintiff's severe allegations of disabling pain in her brief, she did not return to Dr. Dennis or seek out any other treatment for six months—until June 2003.

### C.  The ALJ's Failure to Consider Records After Plaintiff's Date Last Insured

Plaintiff next asserts the ALJ erred by refusing to consider submitted records from 2005 forward.  Specifically, Plaintiff argues that the ALJ's refusal to consider these records violates Social Security Ruling 83-20p.  Social Security Ruling 83-20p states the policy and describes the relevant evidence to be considered when establishing the onset date of disability.  Plaintiff's onset date of disability was not at issue at the time of the ALJ's decision on or appeal.  Accordingly, Plaintiff's argument that the ALJ violated Social Security Ruling 83-20p by refusing to consider submitted records from 2005 to 2007 is not well taken.

However, evidence of a medical condition after the expiration of insured status must be considered to the extent that it sheds light on a claimant's condition before that date. *Higgs v. Bowen*, 880 F.2d 860, 863 (6th Cir. 1988) (citing *Martonik v. Heckler*, 773 F.2d 236, 240-41 (8th Cir. 1985).  *See also Garland v. Shalala*, No. 94-6647, 1996 U.S. App. LEXIS 6107, at *23 (6th Cir. 1996).  The record shows that Plaintiff had surgery on June 28, 2004 (Tr. 106-07, 123-37).  In July 2004, Plaintiff had complete relief in leg pain, ambulated in a steady fashion, and had good strength, stable reflexes, and good early progress (Tr. 117).  In September 2004, two state agency physicians opined that Plaintiff should be able to perform light work within six months from her date of surgery (or before December 28, 2004) (Tr. 110).  Also in September, Dr Sybert noted good strength and good ongoing consolidation (Tr. 199).  However, in November, Dr. Sybert noted that Plaintiff ambulated with a slow gait, and had diminished reflexes, some pain giveaway weakness, and slow clinical progress (Tr. 114-15).  In February 2005, Plaintiff presented to Dr. Dennis complaining of lower back pain (Tr. 273).  Plaintiff had diminished sensation and a foot drop on the left (Id.).  Plaintiff continued to complain of back pain, in

addition to neck, shoulder, and arm pain, during 2005. A CT scan in September 2005 showed marked disc space loss at L5-S1 and advanced degenerative changes at L5-S1 and L4-L5—the same areas where Plaintiff underwent fusion surgery in June 2004. The ALJ refused to consider Plaintiff's submitted records from 2005 through 2007 because he considered them too far removed from her date last insured (tr. 24), despite the fact that these records show Plaintiff continued to complain of back pain and have marked problems with the same area of her back in 2005. The records from 2005 forward could reasonably impact on the understanding of the severity of Plaintiff's limitations during the relevant time period. Accordingly, the Court concludes that the ALJ's refusal to consider these records, under the circumstances of this case, is not supported by substantial evidence and directs the ALJ to consider these records on remand.

### D.  The ALJ's RFC Determination

Plaintiff also argues that the ALJ's conclusion she is capable of sedentary work is not supported by substantial evidence. Plaintiff's argument is well taken.

The ALJ concluded Plaintiff retains an RFC for sedentary work with the option to alternate between sitting and standing every one-half hour, no more than occasionally climbing of ramps and stairs, and no climbing of ladders, ropes or scaffolds (Tr. 21). The Court is unable to conclude that a reasonable mind might accept the evidence that was relied upon by the ALJ as adequate support for his RFC determination. In forming his RFC determination, the ALJ relied on the opinion of Dr. Sybert, who opined that Plaintiff showed good progress after surgery and that her residual leg pain "should resolve" eventually (Tr. 23). However, Dr. Sybert also acknowledged that Plaintiff's initial early progress after surgery slowed in November 2004 and records indicate that Plaintiff continued to experience pain and marked back problems in 2005.

The ALJ also relied on the fact that although Plaintiff had significant pathology to her lumbar spine requiring surgery, "there was no documentation indicating that the claimant was not progressing or was exhibiting acute symptoms through her date last insured" (Tr. 24). The ALJ's reliance on a lack of such documentation is misplaced because the records from 2005 forward indicate that Plaintiff continued to experience pain and marked back problems after her surgery, yet the ALJ improperly refused to consider these records. These records could reasonably impact on the understanding of the severity of Plaintiff's limitations prior to her date last insured.

The ALJ appropriately gave less weight to the state agency physicians' opinion, which was made three months after Plaintiff's surgery, because they did not have the opportunity to examine Plaintiff. However, the state agency physicians' assessment is the only RFC assessment in the entire record and merely concluded that Plaintiff *should* be able to perform light work less than six months from the date of her surgery. The records from 2005 forward suggest that the state agency physicians' estimation did not come to fruition. There are no other records whatsoever as to what limitations might be imposed by Plaintiff's impairments at the time of, and after, her surgery. In the absence of consideration of the submitted records from 2005 forward and either testimony from a medical expert ("ME"), a consultative examination, or additional information from Plaintiff's treating physician Dr. Sybert, the Court is unable to conclude that substantial evidence supports the ALJ's RFC determination.

The Court recognizes that an ALJ has broad discretion as to whether to employ an ME. Indeed, use of an ME is not mandatory unless the evaluation and interpretation of background medical test data is required or unless the use of an ME is ordered by the Appeals Council or a

court. *See* HALLEX 1-2-534. However, an ME is able to advise the ALJ on medical issues and answer specific questions about the claimant's impairments, the medical evidence, and functional limitations based on the claimant's testimony and the record. *See* 20 C.F.R. § 416.927(e)(2)(iii). Considering the absence of opinions in this case—aside from the state agency physician's mere RFC estimation—indicating the severity of Plaintiff's impairments and resulting limitations, ME testimony would have been beneficial in this case.

In the alternative, the ALJ could have ordered a consultative examination. The Social Security regulations grant an ALJ authority to refer a claimant to a consultative specialist if the existing medical sources do not contain sufficient evidence to make a disability determination. *See Landsaw v. Secretary of Health & Human Servs.*, 803 F.2d 211, 214 (6th Cir. 1986); *Deaton v. Sullivan*, 897 F.2d 529 (6th Cir. 1990). An ALJ is required to order a consultative examination if the record establishes that such an examination is necessary to enable him to render an informed decision. *Landsaw*, 803 F.2d at 214. The record in this case indicates that a consultative examination would have aided the ALJ in making an informed RFC determination.

Finally, the ALJ could have recontacted Plaintiff's treating physician Dr. Sybert. Dr. Sybert performed Plaintiff's back surgery and served as her treating physician both before and after this surgery. Thus, Dr. Sybert was in the best position to evaluate Plaintiff's condition and resulting limitations both before and after her surgery. However, Dr. Sybert was not asked to provide, and his treatment notes do not indicate that he performed, any such evaluation.

The Court has determined that this case should be remanded for consideration of the submitted records from 2005 forward and an evaluation of whether a closed period of disability

would be appropriate.  On remand, the Court also finds that it would be appropriate to obtain an opinion from Dr. Sybert regarding the Plaintiff's limitations at the time of, and after, her surgery.

## VI. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is not supported by substantial evidence.  Accordingly, the decision of the Commissioner is REVERSED and REMANDED to the Social Security Administration for further proceedings not inconsistent with this decision.

> s/ Kenneth S. McHargh
> Kenneth S. McHargh
> United States Magistrate Judge

Date: May 6, 2008